

# Service of Process Transmittal

10/07/2021
CT Log Number 540378003

**TO:** Craig Sanders
MLC International Investment Group LLC
4514 COLE AVE., SUITE 1175
DALLAS, TX 75205

**RE:** Process Served in Louisiana

**FOR:** Flow Line Transportation, LLC (Domestic State: LA)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | JET SUPPORT SERVICES, INC. vs. FLOW LINE TRANSPORTATION, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2021L009123 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/07/2021 at 08:55 |
| **JURISDICTION SERVED:** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air, 1ZX212780133494891 |
| | Image SOP |
| | Email Notification, Craig Sanders craig.sanders@coxoil.com |
| | Email Notification, Vincent Devito vincent.devito@coxoil.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816<br>866-203-1500<br>DealTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook ☑ COUNTY | SUMMONS | For Court Use Only |
|---|---|---|
| **Instructions ▼**<br>Enter above the county name where the case was filed. | JET SUPPORT SERVICES, INC.<br>_____<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Enter the names of all people you are suing as Defendants/Respondents. | FLOW LINE TRANSPORTATION, LLC<br>_____<br>**Defendant / Respondent** *(First, middle, last name)* | **2021L009123**<br>_____<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

| | |
|---|---|
| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons,* or *Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In 1a, enter the name and address of a Defendant/Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | 1. **Defendant/Respondent's address and service information:**<br>   a. Defendant/Respondent's primary address/information for service:<br>     Name *(First, Middle, Last):* FLOW LINE TRANSPORTATION, LLC<br>     Registered Agent's name, if any: CT CORPORATION SYSTEM<br>     Street Address, Unit #: 3867 PLAZA TOWER DR.<br>     City, State, ZIP: BATON ROUGE, LA 70816<br>     Telephone: _____ Email: _____ |
| In 1b, enter a second address for Defendant/Respondent, if you have one. |    b. If you have more than one address where Defendant/Respondent might be found, list that here:<br>     Name *(First, Middle, Last):* _____<br>     Street Address, Unit #: _____<br>     City, State, ZIP: _____<br>     Telephone: _____ Email: _____ |
| In 1c, check how you are sending your documents to Defendant/Respondent. |    c. Method of service on Defendant/Respondent:<br>     ☐ Sheriff      ☑ Sheriff outside Illinois: DELAWARE<br>                                                                                  County & State<br>     ☐ Special process server      ☐ Licensed private detective |

FILED DATE: 9/13/2021 4:16 PM 2021L009123

FILED DATE: 9/13/2021 4:16 PM 2021L009123

Enter the Case Number given by the Circuit Clerk: _____

| In 2, enter the amount of money owed to you. | **2.** | **Information about the lawsuit:** |
|---|---|---|
| | | Amount claimed: $ 220,549.83 |

| In 3, enter your complete address, telephone number, and email address, if you have one. | **3.** | **Contact information for the Plaintiff/Petitioner:** |

Name *(First, Middle, Last)*: JOHN S. PUCIN
Street Address, Unit #: 935 NATIONAL PARKWAY
City, State, ZIP: SCHAUMBURG, IL 60173
Telephone: _____ Email: JPUCIN@PFPCLAW.COM

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** | **Instructions for person receiving this *Summons* (Defendant):** |
|---|---|---|

☑ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served *(not counting the day of service)* by e-filing or at:
  Address: RICHARD J. DALEY CENTER
  City, State, ZIP: CHICAGO, IL 60602

☐ b. Attend court:
  On: _____ at _____ ☐ a.m. ☐ p.m. in _____
       *Date*                *Time*                              *Courtroom*
  **In-person at:**

  _____
  *Courthouse Address*     *City*                    *State*    *ZIP*
  OR
  **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):
  By telephone: _____
                *Call-in number for telephone remote appearance*
  By video conference: _____
                      *Video conference website*

  _____
  *Video conference log-in information (meeting ID, password, etc.)*

  Call the Circuit Clerk at: _____ or visit their website
                             *Circuit Clerk's phone number*
  at: _____ to find out more about how to do this.
      *Website*

| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/Response*. |
| In 4b, fill out: <br>• The court date and time the clerk gave you. <br>• The courtroom and address of the court building. <br>• The call-in or video information for remote appearances (if applicable). <br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. |

| **STOP!** The Circuit Clerk will fill in this section. | **Witness this Date:** _____ | *Seal of Court* |
|---|---|---|
| | **Clerk of the Court:** 9/13/2021 4:16 PM IRIS Y. MARTINEZ | |
| **STOP!** The officer or process server will fill in the Date of Service. | This *Summons* must be served within 30 days of the witness date. <br> Date of Service: _____ <br> *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* | |

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

FILED DATE: 9/13/2021 4:16 PM 2021L009123

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook ☑ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| **Instructions** | | |
| Enter above the county name where the case was filed. | JET SUPPORT SERVICES, INC.<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br>FLOW LINE TRANSPORTATION, LLC<br>**Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
  *First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent
_____ as follows:
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
        *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on _____ , 20 _____ .

    ☐ On the Corporation's agent, _____
        *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk:_____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____

FILED DATE: 9/13/2021 4:16 PM 2021L009123

| **DO NOT** complete this section. The sheriff or private process server will complete it. |
|---|

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |
|---|

**By:**

*Signature by:* _____
   ☐ Sheriff
   ☐ Sheriff outside Illinois:
   _____
   *County and State*
   ☐ Special process server
   ☐ Licensed private detective

**FEES**
Service and Return:  $ _____
Miles _____     $ _____
Total                $ 0.00

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED
9/13/2021 4:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| JET SUPPORT SERVICES, INC. | ) | Case No. 2021L009123 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLOW LINE TRANSPORTATION, LLC | ) | |
| | ) | |
| Defendant. | ) | |

### VERIFIED COMPLAINT

Now comes Plaintiff, Jet Support Services, Inc. ("Plaintiff") and for its complaint against Defendant, Flow Line Transportation, LLC ("Defendant") states as follows:

1. Plaintiff is a duly licensed Delaware corporation licensed to do business in Illinois.

2. Defendant is a duly licensed Louisiana limited liability company with a last known address located in New Orleans, Louisiana.

3. On or about September 27, 2016 Defendant entered into a Maintenance Program Contract for Parts-Only ("Agreement") for a helicopter more fully described as a Sikorsky/S76C+ with Plaintiff. A true and correct copy of the Agreement is attached hereto and incorporated herein as "Exhibit A".

4. Incorporated within the Agreement was a clause whereby if either party was in breach of the Agreement the exclusive jurisdiction and venue of any action taken pursuant to the breach shall be in Cook County, Illinois. See Paragraph 5.10 of Exhibit A.

5. Plaintiff submits that subsequent to the execution of the Agreement a maintenance program was established for Defendant.

6. Defendant is in breach of the Agreement by failing to pay the amounts due and owing Plaintiff under the Agreement in the sum of $220,549.83. A true and correct copy of the Statement(s) are attached hereto and incorporated herein as "Exhibit B".

7. Plaintiff submits that incorporated within the Agreement is a clause whereby the prevailing party may recover its reasonable attorneys' fees.

8. Plaintiff further submits that it has abided by all conditions precedent to the Agreement.

WHEREFORE, Plaintiff prays that judgment be rendered in its favor against Defendant, Flow Line Transportation, LLC in the amount of $220,549.83 plus reasonable attorneys' fees and costs.

Respectfully submitted:

_/s/ John S. Pucin_
One of its attorneys

John S. Pucin
1699 E. Woodfield Rd., #360
Schaumburg, IL 60173
Cook County Atty#: 41265
847-407-2669 ph
866-519-1984 fax
jpucin@pfpclaw.com

6. Defendant is in breach of the Agreement by failing to pay the amounts due and owing Plaintiff under the Agreement in the sum of $220,549.83. A true and correct copy of the Statement(s) are attached hereto and incorporated herein as "Exhibit B".

7. Plaintiff submits that incorporated within the Agreement is a clause whereby the prevailing party may recover its reasonable attorneys' fees.

8. Plaintiff further submits that it has abided by all conditions precedent to the Agreement.

WHEREFORE, Plaintiff prays that judgment be rendered in its favor against Defendant, Flow Line Transportation, LLC in the amount of $220,549.83 plus reasonable attorneys' fees and costs.

Respectfully submitted:

/s/ *John S. Pucin*
One of its attorneys

John S. Pucin
1699 E. Woodfield Rd., #360
Schaumburg, IL 60173
Cook County Atty#: 41265
847-407-2669 ph
866-519-1984 fax
jpucin@pfpclaw.com

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements and allegations set forth in the Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that her verily believes the same to be true.

DocuSigned by:

*Paula Cunningham*

526E7025110C44E...

Paula Cunningham | Director of Accounting Operations

Printed Name and Title

EXHIBIT A

 

JSSI0049495

## JSSI AIRFRAME PARTS-ONLY
### MAINTENANCE PROGRAM CONTRACT

THIS CONTRACT (this "Contract") is entered into as of the Contract Effective Date by and between FLOW LINE TRANSPORTATION, LLC, a Louisiana limited liability company (the "Client"), and JET SUPPORT SERVICES, INC., a Delaware corporation ("JSSI"). All capitalized terms used but not defined in this Contract shall have the meanings ascribed to them in Exhibit B.

### CONTRACT INFORMATION
| | |
|---|---|
| Contract Effective Date | September 27, 2018 |
| Original Enrollment Date | September 27, 2018 |
| Contract Expiration Date | September 26, 2023 |

### ASSET INFORMATION
| | |
|---|---|
| Aircraft Make/Model | Sikorsky/ S76C+ |
| Aircraft Manufacture Date | December 8, 1998 |
| Registration No. | N664BC |

| ASSET | SERIAL NUMBER | ORIGINAL | | CURRENT | |
|---|---|---|---|---|---|
| Airframe | 760492 | H: 4783.1 | C: 11339 | H: 4783.1 | C: 11339 |

### RATES & FEES (All fees in US Dollars)
| | |
|---|---|
| Airframe Hourly Rate | $1,545.49 |

**Initial Fees**
| | |
|---|---|
| Enrollment Fee | $7,500.00 |
| PIDS Fee | $1,000.00 |
| Subsequent Transfer Fee | $2,500.00 |

### MINIMUM OPERATING HOURS
| | |
|---|---|
| Minimum Operating Hours per Contract Year | 240.0 |

### ANTICIPATED AIRCRAFT FLIGHT PROFILE
| | | | |
|---|---|---|---|
| Aircraft Flight Hours per Year | 240.0 | Monthly Equivalent | 20 |
| Landings per Contract Year | 360 | Monthly Equivalent | 30 |

### OEM WARRANTY EXPIRATION
| | | | |
|---|---|---|---|
| Airframe | N/A | Primary/Secondary Structure | N/A |
| Avionics | N/A | Interior | N/A |

### OPERATING CERTIFICATE & GOVERNING AVIATION AUTHORITY
| | |
|---|---|
| Operating Certificate | FAR Part 91 |
| Governing Aviation Authority | FAA |
| Tax Exemption | No |

This Contract consists of this cover page and following exhibits attached hereto which are incorporated in and made a part of this Contract:
- Exhibit A: JSSI Airframe Parts-Only Maintenance Program Terms and Conditions
- Exhibit B: Defined Terms
- Exhibit C: Covered Parts

This Contract is executed and delivered by a duly authorized officer of each of Client and JSSI as of the Contract Effective Date.

| FLOW LINE TRANSPORTATION, LLC | JET SUPPORT SERVICES, INC. |
|---|---|
| BY: | BY: |
| PRINTED NAME: Craig L. Sanders | PRINTED NAME: Joy P. Nobel |
| TITLE: CEO | TITLE: Senior Vice President, Client & Administrative Services |

AFPO-2018-1　　　　　　　　　　　　　　　　　　　　　　　　Proprietary & Confidential

 FLOW LINE TRANSPORTATION, LLC JSI0049195

# EXHIBIT A
## JSSI AIRFRAME PARTS-ONLY MAINTENANCE PROGRAM
## TERMS AND CONDITIONS

**Section 1. Airframe Parts-Only Maintenance Program.**

**1.1. Scheduled Maintenance.**

(a) JSSI will furnish Covered Parts required in connection with Scheduled Maintenance and Routine Inspections of the Airframe and Systems, subject to a purchase order issued by JSSI on the Client's behalf for such Covered Parts. The Client agrees to notify JSSI at least 45 days in advance of Scheduled Maintenance. For the avoidance of doubt, the Client will be responsible for all costs related to Scheduled Maintenance other than for such Covered Parts.

(b) If the Client elects to replace a Covered Part prior to its calendar/cycle/hour expiration, then the Client will be responsible for a percentage of any Covered Part corresponding to the unused time remaining on the replaced part. If the Governing Aviation Authority or the OEM amends or modifies the calendar/cycle/hour limitations of a given Inspection or Covered Part, then JSSI will be entitled to assign a Pro Rata to the Client and/or adjust the Airframe Hourly Rate accordingly. In the event the Client elects to perform an Inspection or maintenance early, the early performance of which (and/or any additional Inspection or maintenance resulting from such early performance) was not projected to occur during the term hereof, based on the Anticipated Aircraft Flight Profile, then JSSI shall have no responsibility for any of the costs of such Inspection or maintenance or any discrepancies or parts arising therefrom or related thereto.

**1.2. Unscheduled Maintenance.**

(a) JSSI will furnish Covered Parts required in connection with Unscheduled Maintenance on the Airframe and Systems, subject to a purchase order issued by JSSI on the Client's behalf for such Covered Parts. In the event the Client reasonably determines the Airframe requires Unscheduled Maintenance for which Covered Parts will be required, the Client shall promptly notify JSSI of the location and condition of the Aircraft. JSSI shall, as it deems appropriate, coordinate with the Approved Repair Facility to either (i) cause to be dispatched a Serviceable Unit to the specified location in exchange for the Unserviceable Unit, or (ii) effect a timely repair of the Unserviceable Unit pursuant to a purchase order issued by JSSI on the Client's behalf whenever practicable. For the avoidance of doubt, the Client will be responsible for issuing a purchase order for any Unscheduled Maintenance other than for such Covered Parts.

**1.3. Service Bulletins and Airworthiness Directives.** JSSI shall furnish Covered Parts required in connection with (a) Service Bulletins designated by the OEM as mandatory and (b) Airworthiness Directives not associated with an existing Service Bulletin issued by the Governing Aviation Authority, in each case if the original issue date of any such Service Bulletin or Airworthiness Directive is subsequent to the Original Enrollment Date. All other Service Bulletin and Airworthiness Directive compliance, including any Service Bulletin designated by the OEM as optional or recommended, is at the Client's discretion and sole expense.

**1.4. Removed Parts.** All Covered Parts that are removed and replaced under this Contract shall be the property of JSSI and may not be destroyed or removed from the Approved Repair Facility without the prior written consent of JSSI.

**1.5. Replacement Parts.** All Covered Parts shall be provided in the following order of availability: Serviceable, reworked, overhauled or new. Unless approved by JSSI in advance in writing, JSSI will only pay for the Covered Part requiring replacement, not the entire or upgraded Assembly.

**1.6. No Conversion or Upgrade.** Nothing set forth herein shall be deemed to provide for the conversion or upgrade of any Covered Part to a later or improved part or for the replacement of Serviceable Covered Parts in response to design changes or regulatory changes after manufacture.

**1.7. Exclusions.** Notwithstanding anything to the contrary contained herein, JSSI shall not be responsible for the following costs:

(a) All labor charges and all handling, service, subscription, commissioning or user fees of any kind;

(b) Any part or Component not constituting a Covered Part and any Covered Part that was not installed on the Airframe on the date of this Contract, and any costs related to a Rental Component;

(c) To remedy or repair any loss or damage in any way attributable to Abuse of the Aircraft and/or any Covered Part;

(d) Any costs incurred in connection with a "no fault found" event;

(e) To remedy or repair any loss or damage incurred while the Aircraft or a Covered Part is under the control of the Approved Repair Facility;

(f) Items in need of repair to the extent covered by insurance or applicable warranty (whether or not a claim is filed);

(g) All tooling and equipment rental costs, Consumable Hardware, shop supplies and consumables, including fuels, lubricants, oil, fluids, oxygen, nitrogen or other fire extinguishing agents and gases;

(h) All freight charges, and any loss or damage incurred while in transit;

(i) All taxes, environmental fees, restocking fees, duties and import tariffs applicable to the repair, maintenance, sale, use, delivery or transportation of the Aircraft or Covered Parts or to the services provided hereunder;

(j) Expenses for test flights and Aircraft ferry flights for Scheduled Maintenance or Unscheduled Maintenance;

(k) Additional maintenance required by the Governing Aviation Authority as a result of regulations relating to charter or any other revenue-generating operations that require increased maintenance;

(l) All repair logistics expenses related to on-site maintenance activities, including travel and out of pocket expenses, mobile repair units, personnel and equipment charges;

(m) Any Covered Part requiring repair or replacement and the associated labor to repair or replace any such Covered Part as a direct result of Corrosion or Erosion;

(n) To remedy or repair any loss or damage attributable to any external causes whatsoever, including, fire, extinguishing of fire, accident, Lightning Strikes, explosion, impact or collision, Foreign Object Damage, Total Particulate Matter and aerosols, burglary, theft, or natural catastrophe or any consequence of war, terrorism, invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, mutiny, riot, strike, lock-out, labor disruption, civil unrest, military or usurped power, conspiracy, confiscation, commandeering, requisition or destruction of or damage to property by order of any government or any public authority;

(o) To remedy or repair any loss or damage attributable to secondary damage outside of the System that was the source of the failure;

(p) Mission Specific Equipment;

(q) Airframe life extension Airworthiness Directives issued by the Governing Aviation Authority, and Airframe life extension Service Bulletins issued by the OEM; and

(r) Any costs arising in connection with a discretionary or optional inspection (including inspections associated with the potential sale, transfer, export or import of the Aircraft), and any costs to remedy or repair discrepancies identified by such inspection.

1.8. <u>Missing Covered Parts</u>. The Client shall be responsible for the costs to replace any Covered Part that is missing from the Aircraft. In addition, the Client shall be responsible for the costs to recertify any Covered Part missing its document of certification or missing its data tag or plate.

1.9. <u>Limitation of Liability</u>. Specific Exclusions and Disclaimer of Warranty. The Client acknowledges and agrees that:

(a) All Covered Parts will be acquired by JSSI (or an Affiliate) from a third-party vendor or the manufacturer, and will be installed by an Approved Repair Facility and not by JSSI. The Approved Repair Facility, when performing services for the Client in accordance with this Contract, shall be doing so as an independent contractor and shall in no case be considered an agent of JSSI.

(b) JSSI will use commercially reasonable efforts to resolve any reasonable disputes between the Client and the vendor of the Covered Part and/or the Approved Repair Facility with respect to a Covered Part, but neither JSSI nor any Affiliate of JSSI makes any representation, warranty or guarantee, express or implied about any Covered Part or the services provided by any Approved Repair Facility in any respect. JSSI will use commercially reasonable efforts to assign to the Client any and all warranty rights provided to JSSI or its Affiliate by the vendor or manufacturer of any Covered Part.

(c) JSSI AND ITS AFFILIATES MAKE NO WARRANTY OR REPRESENTATION, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, TO THE CLIENT REGARDING ANY COVERED PART OR IN CONNECTION WITH ANY REPAIR AND MAINTENANCE WORK PERFORMED BY AN APPROVED REPAIR FACILITY, WHETHER ARISING UNDER THIS CONTRACT OR OTHERWISE, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(d) JSSI AND ITS AFFILIATES SHALL HAVE NO LIABILITY WHATSOEVER TO THE CLIENT FOR DAMAGES OF ANY KIND IN ANY WAY RELATING TO A COVERED PART OR THE PERFORMANCE OF ANY REPAIR AND MAINTENANCE WORK BY AN APPROVED REPAIR FACILITY OR ANY OTHER SERVICE PROVIDED BY THIRD PARTIES IN CONNECTION WITH THIS CONTRACT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY, OR OTHERWISE. IN NO EVENT SHALL JSSI OR ANY OF ITS AFFILIATES BE LIABLE TO THE CLIENT FOR ANY LOST PROFITS OR SAVINGS, LOSS OF BUSINESS, LOSS OF DATA, LOSS OF REVENUE, LOSS OF USE OR MONEY, LOSS OF OPPORTUNITY OR ANY INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL OR PUNITIVE DAMAGES (WHETHER OR NOT ALSO CONSTITUTING ONE OF THE FOREGOING SPECIFIC TYPES OF LOSS).

1.10. <u>Authorized Maintenance Performed by the Client</u>. To the extent the Client is authorized by the Governing Aviation Authority and/or the applicable OEM to perform Scheduled Maintenance or Unscheduled Maintenance, then the Client may perform Scheduled or Unscheduled Maintenance covered hereunder following expiration of any applicable OEM warranty period and subject to JSSI's prior written consent. The Client must deliver to JSSI a completed reimbursement request form and any other documentation reasonably requested by JSSI for such maintenance within 45 days of the labor performed, and JSSI shall reimburse the Client for Covered parts subject to this Contract.

1.11. <u>Prices for Covered Parts</u>. Notwithstanding anything to the contrary set forth herein, the maximum price for any Covered Part to be provided hereunder shall not exceed the least of: (i) the then-current OEM retail price, as listed in the OEM parts catalog; (ii) any favorable pricing and terms offered by the OEM in connection with any campaign program; or (iii) for any Covered Part provided by the Client, the lesser of the Client's actual out-of-pocket cost for such Covered Part or the cost that JSSI would have paid for a substantially comparable Covered Part. In the event that a Serviceable part is reasonably available and permitted to be installed in accordance with the applicable Manuals, but a new part is installed for any reason, then JSSI shall only be obligated to pay an amount up to the cost for such Serviceable part, and the Client will be solely responsible for all costs in excess thereof. In the event that a Covered Part may reasonably be repaired, JSSI reserves the right, in its reasonable discretion, to pay for the cost to repair such Covered Part in lieu of providing a replacement.

1.12. <u>Warranty Maintenance</u>. Unless otherwise agreed to by the parties in writing, all warranty maintenance shall be completed by an Approved Repair Facility authorized to perform warranty maintenance and accepted by JSSI. The Client shall cause to be performed all maintenance reasonably required to be performed prior to expiration of the applicable warranty period.

1.13. <u>Technical Advisor</u>. JSSI shall provide technical support in connection with Covered Parts hereunder.

Section 2. Obligations of Client.

2.1. <u>Operation and Maintenance</u>.

(a) The Client authorizes JSSI to have reasonable access to the Aircraft, including records relating thereto, in connection with any maintenance covered hereunder.

(b) Throughout the term hereof, the Client shall operate and maintain the Aircraft in accordance with the applicable Manuals. JSSI reserves the right to determine, in good faith, utilizing the information specified in Section 2.2, whether the Client's operation of the Aircraft is in accordance with the applicable Manuals.

(c) The Client shall not operate the Aircraft for any Unusual Purposes.

(d) The Client warrants to the best of its knowledge that any known or suspected Exclusion or damage to the Aircraft has been reported to JSSI. The Client agrees to promptly report to JSSI any Exclusion or damage to the Aircraft.

(e) The Client agrees to maintain a policy of insurance insuring the replacement value of the hull of the Aircraft and agrees to file a claim with its insurance company for any costs covered under such insurance prior to seeking payment by JSSI. The Client further agrees to provide JSSI with a certificate of insurance evidencing such insurance, if requested by JSSI.

(f) In the event any Covered Part requiring replacement hereunder is no longer manufactured by the OEM and, accordingly, the replacement of the Covered Part necessitates structural modification or modification of any System of the Airframe, any such modification shall be performed at the Client's expense.

(g) The Client shall notify JSSI in advance of any planned equipment changes or additions to the Airframe, subsequent to the date of this Contract. In the event the Client desires to maintain coverage for such changed or additional equipment, JSSI reserves the right to make an appropriate adjustment to the Airframe Hourly Rate.

(h) The Client shall return each Covered Part replaced hereunder (a "Core") to the Approved Repair Facility or other provider of the replacement Covered Part in accordance with such provider's written requirements. JSSI shall not be responsible for the payment of any late fees assessed due to the Client's failure to timely return a Core. JSSI shall invoice the Client for the full retail price of any Core not returned in accordance with this subsection.

2.2. <u>Records</u>. The Client warrants that the Aircraft and Engine logbooks and records currently contain, and shall continue to contain, accurate entry of all operating times and landings/cycles, operating events, preservation activities undertaken and any modifications, repairs or maintenance required to be recorded for the purposes of this Contract and by the Governing Aviation Authority, the OEM or as required by law. Such information shall be promptly furnished to JSSI upon the request of JSSI. In addition, the Client shall provide JSSI reasonable access to any maintenance tracking system utilized by the Client by completing JSSI's then-current maintenance access form. During Scheduled Maintenance and Unscheduled Maintenance, the Client agrees to ship all logbooks and any other pertinent operating records, if required, with the Aircraft to the Approved Repair Facility

(q) Airframe life extension Airworthiness Directives issued by the Governing Aviation Authority, and Airframe life extension Service Bulletins issued by the OEM; and

(r) Any costs arising in connection with a discretionary or optional inspection (including inspections associated with the potential sale, transfer, export or import of the Aircraft), and any costs to remedy or repair discrepancies identified by such inspection.

1.8. Missing Covered Parts. The Client shall be responsible for the costs to replace any Covered Part that is missing from the Aircraft. In addition, the Client shall be responsible for the costs to recertify any Covered Part missing its document of certification or missing its data tag or plate.

1.9. Limitation of Liability. Specific Exclusions and Disclaimer of Warranty. The Client acknowledges and agrees that:

(a) All Covered Parts will be acquired by JSSI (or an Affiliate) from a third-party vendor or the manufacturer, and will be installed by an Approved Repair Facility and not by JSSI. The Approved Repair Facility, when performing services for the Client in accordance with this Contract, shall be doing so as an independent contractor and shall in no case be considered an agent of JSSI.

(b) JSSI will use commercially reasonable efforts to resolve any reasonable disputes between the Client and the vendor of the Covered Part and/or the Approved Repair Facility with respect to a Covered Part, but neither JSSI nor any Affiliate of JSSI makes any representation, warranty or guarantee, express or implied about any Covered Part or the services provided by any Approved Repair Facility in any respect. JSSI will use commercially reasonable efforts to assign to the Client any and all warranty rights provided to JSSI or its Affiliate by the vendor or manufacturer of any Covered Part.

(c) JSSI AND ITS AFFILIATES MAKE NO WARRANTY OR REPRESENTATION, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, TO THE CLIENT REGARDING ANY COVERED PART OR IN CONNECTION WITH ANY REPAIR AND MAINTENANCE WORK PERFORMED BY AN APPROVED REPAIR FACILITY, WHETHER ARISING UNDER THIS CONTRACT OR OTHERWISE, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(d) JSSI AND ITS AFFILIATES SHALL HAVE NO LIABILITY WHATSOEVER TO THE CLIENT FOR DAMAGES OF ANY KIND IN ANY WAY RELATING TO A COVERED PART OR THE PERFORMANCE OF ANY REPAIR AND MAINTENANCE WORK BY AN APPROVED REPAIR FACILITY OR ANY OTHER SERVICE PROVIDED BY THIRD PARTIES IN CONNECTION WITH THIS CONTRACT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY, OR OTHERWISE. IN NO EVENT SHALL JSSI OR ANY OF ITS AFFILIATES BE LIABLE TO THE CLIENT FOR ANY LOST PROFITS OR SAVINGS, LOSS OF BUSINESS, LOSS OF DATA, LOSS OF REVENUE, LOSS OF USE OR MONEY, LOSS OF OPPORTUNITY OR ANY INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL OR PUNITIVE DAMAGES (WHETHER OR NOT ALSO CONSTITUTING ONE OF THE FOREGOING SPECIFIC TYPES OF LOSS).

1.10. Authorized Maintenance Performed by the Client. To the extent the Client is authorized by the Governing Aviation Authority and/or the applicable OEM to perform Scheduled Maintenance or Unscheduled Maintenance, then the Client may perform Scheduled or Unscheduled Maintenance covered hereunder following expiration of any applicable OEM warranty period and subject to JSSI's prior written consent. The Client must deliver to JSSI a completed reimbursement request form and any other documentation reasonably requested by JSSI for such maintenance within 46 days of the labor performed, and JSSI shall reimburse the Client for Covered parts subject to this Contract.

1.11. Prices for Covered Parts. Notwithstanding anything to the contrary set forth herein, the maximum price for any Covered Part to be provided hereunder shall not exceed the least of: (i) the then-current OEM retail price, as listed in the OEM parts catalog; (ii) any favorable pricing and terms offered by the OEM in connection with any campaign program; or (iii) for any Covered Part provided by the Client, the lesser of the Client's actual out-of-pocket cost for such Covered Part or the cost that JSSI would have paid for a substantially comparable Covered Part. In the event that a Serviceable part is reasonably available and permitted to be installed in accordance with the applicable Manuals, but a new part is installed for any reason, then JSSI shall only be obligated to pay an amount up to the cost for such Serviceable part, and the Client will be solely responsible for all costs in excess thereof. In the event that a Covered Part may reasonably be repaired, JSSI reserves the right, in its reasonable discretion, to pay for the cost to repair such Covered Part in lieu of providing a replacement.

1.12. Warranty Maintenance. Unless otherwise agreed to by the parties in writing, all warranty maintenance shall be completed by an Approved Repair Facility authorized to perform warranty maintenance and accepted by JSSI. The Client shall cause to be performed all maintenance reasonably required to be performed prior to expiration of the applicable warranty period.

1.13. Technical Advisor. JSSI shall provide technical support in connection with Covered Parts hereunder.

Section 2. Obligations of Client.

2.1. Operation and Maintenance.

(a) The Client authorizes JSSI to have reasonable access to the Aircraft, including records relating thereto, in connection with any maintenance covered hereunder.

(b) Throughout the term hereof, the Client shall operate and maintain the Aircraft in accordance with the applicable Manuals. JSSI reserves the right to determine, in good faith, utilizing the information specified in Section 2.2, whether the Client's operation of the Aircraft is in accordance with the applicable Manuals.

(c) The Client shall not operate the Aircraft for any Unusual Purposes.

(d) The Client warrants to the best of its knowledge that any known or suspected Exclusion or damage to the Aircraft has been reported to JSSI. The Client agrees to promptly report to JSSI any Exclusion or damage to the Aircraft.

(e) The Client agrees to maintain a policy of insurance insuring the replacement value of the hull of the Aircraft and agrees to file a claim with its insurance company for any costs covered under such insurance prior to seeking payment by JSSI. The Client further agrees to provide JSSI with a certificate of insurance evidencing such insurance, if requested by JSSI.

(f) In the event any Covered Part requiring replacement hereunder is no longer manufactured by the OEM and, accordingly, the replacement of the Covered Part necessitates structural modification or modification of any System of the Airframe, any such modification shall be performed at the Client's expense.

(g) The Client shall notify JSSI in advance of any planned equipment changes or additions to the Airframe, subsequent to the date of this Contract. In the event the Client desires to maintain coverage for such changed or additional equipment, JSSI reserves the right to make an appropriate adjustment to the Airframe Hourly Rate.

(h) The Client shall return each Covered Part replaced hereunder (a "Core") to the Approved Repair Facility or other provider of the replacement Covered Part in accordance with such provider's written requirements. JSSI shall not be responsible for the payment of any late fees assessed due to the Client's failure to timely return a Core. JSSI shall invoice the Client for the full retail price of any Core not returned in accordance with this subsection.

2.2. Records. The Client warrants that the Aircraft and Engine logbooks and records currently contain, and shall continue to contain, accurate entry of all operating times and landings/cycles, operating events, preservation activities undertaken and any modifications, repairs or maintenance required to be recorded for the purposes of this Contract and by the Governing Aviation Authority, the OEM or as required by law. Such information shall be promptly furnished to JSSI upon the request of JSSI. In addition, the Client shall provide JSSI reasonable access to any maintenance tracking system utilized by the Client by completing JSSI's then-current maintenance access form. During Scheduled Maintenance and Unscheduled Maintenance, the Client agrees to ship all logbooks and any other pertinent operating records, if required, with the Aircraft to the Approved Repair Facility

designated to perform the specified maintenance. The Client further agrees to provide JSSI with all information reasonably required by JSSI for the performance of its duties hereunder.

2.3. Cooperation. It is the Client's intention that maintenance decisions regarding Covered Parts shall be based upon a reasonably prudent standard in light of the age, condition, utilization and/or life expectancy of the Aircraft, regardless of who bears the cost of such maintenance under the Contract. In furtherance of the foregoing, the Client agrees to reasonably cooperate with JSSI in order to prevent or mitigate the cost of maintenance covered hereunder.

2.4. Compliance with Laws. The Client represents and warrants that neither it, nor any of its direct or indirect affiliates or beneficial owners, is listed on the U.S. Treasury OFAC Specially Designated Nationals List (SDN), or any similar governmental list promulgated by a governmental agency. In the event the Client (or any affiliate or beneficial owner) becomes so listed at any time this Contract is in effect, the Client will promptly notify JSSI.

Section 3. Transfer, Termination and Continuation of Service.

3.1. Term; Renewal Contract. The term of this Contract shall commence on the Contract Effective Date and shall expire on the Contract Expiration Date, each as set forth on the cover page. Except in accordance with the specific provisions of this Section 3, this Contract is non-cancelable by either party. At the Contract Expiration Date, JSSI may issue to the Client a renewal contract subject to the then-current JSSI terms and conditions and priced in accordance with the costs anticipated to be incurred in the subsequent term. At the time of issuance of such renewal contract, the Client must be in compliance with all terms and conditions of this Contract, including payment of Minimum Service Charges. The beginning Account Balance under such renewal contract shall be equal to the amount of the Account Balance at the conclusion of this Contract

3.2. Transfer of Aircraft to Affiliate. In the event the Client determines to transfer the Aircraft to an Affiliate during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of such transfer. Such notice shall include the name and address of the Affiliate, the intended use of the Aircraft, the country and climate in which the Affiliate intends to operate the Aircraft, and any other information reasonably requested by JSSI. If the Client is in full compliance with the terms and conditions of this Contract at the time of the proposed assignment, and the Affiliate's creditworthiness is acceptable to JSSI, then JSSI, the Client, and the Affiliate shall take all reasonable steps to arrange for the assignment and assumption of all rights and obligations of the Client under this Contract to such Affiliate. Notwithstanding the foregoing, in the event the Client assigns its rights and obligations hereunder to an Affiliate as provided in this section, and such Affiliate intends to utilize the Aircraft in a manner or in a geographical climate or region, which warrants an adjustment to the Airframe Hourly Rate, JSSI shall have the right to make an appropriate adjustment to the Airframe Hourly Rate. The Account Balance under this Contract after such assignment shall be the same as the amount of such Account Balance immediately prior to such assignment.

3.3. Sale of Aircraft with the Program. In the event the Client determines to sell the Aircraft with the Program during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of closing of such sale. Such notice shall indicate a sale with the Program and shall include the name and address of the Purchaser, the estimated Airframe Operating Hours and landings as of the closing date, and any other information reasonably requested by JSSI. The Client shall update such information in connection with such sale. If the Client is in full compliance with the terms and conditions of this Contract at the time of sale, the Purchaser's creditworthiness is acceptable to JSSI, JSSI shall offer the Purchaser a Program contract to maintain enrollment in the Program subject to the then-current JSSI terms and conditions and priced in accordance with the costs anticipated to be incurred in the subsequent term. Such new contract shall be entered into on or before the closing date of such sale. The beginning Account Balance under such new contract shall be equal to the amount of the Account Balance at the conclusion of this Contract. In addition, this Contract shall be terminated, and the parties shall have no further obligations under this Contract.

3.4. Sale of Aircraft without the Program. In the event of a sale of the Aircraft without the Program to a Purchaser (which Purchaser shall not be an Affiliate of the Client) during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of closing of such sale. Such notice shall indicate a sale without the Program and shall include the name and address of the Purchaser, the estimated Airframe Operating Hours and landings as of the closing date, and any other information reasonably requested by JSSI. The Client shall update such information in connection with such sale. JSSI shall thereafter consent to termination of this Contract, subject to Section 3.12.

3.5. Early Termination; Certain Circumstances. In the event the Aircraft is damaged beyond economical repair or becomes unrecoverable because of theft, the Client shall provide written notice to JSSI describing such damage or theft within 5 days following the occurrence of such event. The liability of the parties in further performance of this Contract shall be terminated effective as of the date of such damage or theft, subject to Section 3.12.

3.6. Early Termination; Client's Failure to Pay; Failure to Perform. In the event the Client fails to pay any amounts due and owing hereunder or under any other written agreement between the Client and JSSI within 30 days of the applicable due date, or in the event the Client fails to perform any of its other obligations hereunder or under any other written agreement between the Client and JSSI and after written notice of such failure to perform and the passage of a 30-day period such failure to perform persists, then, in addition to any other rights set forth herein, JSSI shall have the right to terminate this Contract upon written notice thereof to the Client, subject to Section 3.12.

3.7. Early Termination; Falsification, Misrepresentation or Withholding of Data. In the event the Client falsifies, misrepresents or withholds any data required to be maintained or submitted to JSSI or any Approved Repair Facility pursuant to this Contract or pursuant to any other written agreement between the Client and JSSI, JSSI shall thereafter have the right to terminate this Contract by providing written notice thereof to the Client and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of the Client's receipt of such notice, subject to Section 3.12.

3.8. Early Termination; Insolvency; Bankruptcy. If the Client is or becomes insolvent or generally fails to pay, or admits in writing its inability to pay, debt owed as it becomes due, or if the Client applies for, consents to or acquiesces in the appointment of a trustee, receiver or other custodian for the Client or any of its property, or makes a general assignment for the benefit of creditors, or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for the Client or for a substantial part of the Client's property and is not discharged within 60 days, or any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law is commenced in respect of the Client, and if such case or proceeding is not commenced by the Client, it is consented to or acquiesced in by the Client or remains for 60 days undismissed, or any proceeding shall be instituted by or against the Client for its liquidation or dissolution or the Client's business shall terminate for any reason, or the Client takes any action to authorize, or in the furtherance of, any of the foregoing, JSSI shall have the right to terminate this Contract by providing written notice thereof to the Client and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of the Client's receipt of such notice, subject to Section 3.12.

3.9. Early Termination; Repossession. In the event that during the term hereof the Aircraft is repossessed or seized by a lender, lessor, or other third party, the parties hereto shall have no further obligations hereunder, subject to Section 3.12.

3.10. Credit Towards Replacement Aircraft. In the event this Contract is terminated pursuant to Section 3.4 or Section 3.5, if the Client is in compliance with all terms and conditions of this Contract and any other written agreement between the Client and JSSI, the Client shall have the rights set forth in this Section 3.10 or Section 3.11, as the Client shall elect in writing at the time of termination. In the event the Client fails to make an election, the Client shall be deemed to have elected the Credit. If the Client elects a Credit and enrolls a Replacement Aircraft in the Program, the Client shall be eligible for a one-time application of the amount of the Credit under this Contract, against either (a) the amount of the Pro Rata Reduction Fee, if any, due under the new contract for the Replacement Aircraft if the Replacement Aircraft is an In-Service Aircraft; or (b) the amount of monthly

designated to perform the specified maintenance. The Client further agrees to provide JSSI with all information reasonably required by JSSI for the performance of its duties hereunder.

2.3. Cooperation. It is the Client's intention that maintenance decisions regarding Covered Parts shall be based upon a reasonably prudent standard in light of the age, condition, utilization and/or life expectancy of the Aircraft, regardless of who bears the cost of such maintenance under the Contract. In furtherance of the foregoing, the Client agrees to reasonably cooperate with JSSI in order to prevent or mitigate the cost of maintenance covered hereunder.

2.4. Compliance with Laws. The Client represents and warrants that neither it, nor any of its direct or indirect affiliates or beneficial owners, is listed on the U.S. Treasury OFAC Specially Designated Nationals List (SDN), or any similar governmental list promulgated by a governmental agency. In the event the Client (or any affiliate or beneficial owner) becomes so listed at any time this Contract is in effect, the Client will promptly notify JSSI.

Section 3. Transfer, Termination and Continuation of Service.

3.1. Term; Renewal Contract. The term of this Contract shall commence on the Contract Effective Date and shall expire on the Contract Expiration Date, each as set forth on the cover page. Except in accordance with the specific provisions of this Section 3, this Contract is non-cancelable by either party. At the Contract Expiration Date, JSSI may issue to the Client a renewal contract subject to the then-current JSSI terms and conditions and priced in accordance with the costs anticipated to be incurred in the subsequent term. At the time of issuance of such renewal contract, the Client must be in compliance with all terms and conditions of this Contract, including payment of Minimum Service Charges. The beginning Account Balance under such renewal contract shall be equal to the amount of the Account Balance at the conclusion of this Contract

3.2. Transfer of Aircraft to Affiliate. In the event the Client determines to transfer the Aircraft to an Affiliate during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of such transfer. Such notice shall include the name and address of the Affiliate, the intended use of the Aircraft, the country and climate in which the Affiliate intends to operate the Aircraft, and any other information reasonably requested by JSSI. If the Client is in full compliance with the terms and conditions of this Contract at the time of the proposed assignment, and the Affiliate's creditworthiness is acceptable to JSSI, then JSSI, the Client, and the Affiliate shall take all reasonable steps to arrange for the assignment and assumption of all rights and obligations of the Client under this Contract to such Affiliate. Notwithstanding the foregoing, in the event the Client assigns its rights and obligations hereunder to an Affiliate as provided in this section, and such Affiliate intends to utilize the Aircraft in a manner or in a geographical climate or region, which warrants an adjustment to the Airframe Hourly Rate, JSSI shall have the right to make an appropriate adjustment to the Airframe Hourly Rate. The Account Balance under this Contract after such assignment shall be the same as the amount of such Account Balance immediately prior to such assignment.

3.3. Sale of Aircraft with the Program. In the event the Client determines to sell the Aircraft with the Program during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of closing of such sale. Such notice shall indicate a sale with the Program and shall include the name and address of the Purchaser, the estimated Airframe Operating Hours and landings as of the closing date, and any other information reasonably requested by JSSI. The Client shall update such information in connection with such sale. If the Client is in full compliance with the terms and conditions of this Contract at the time of sale, the Purchaser's creditworthiness is acceptable to JSSI, JSSI shall offer the Purchaser a Program contract to maintain enrollment in the Program subject to the then-current JSSI terms and conditions and priced in accordance with the costs anticipated to be incurred in the subsequent term. Such new contract shall be entered into on or before the closing date of such sale. The beginning Account Balance under such new contract shall be equal to the amount of the Account Balance at the conclusion of this Contract. In addition, this Contract shall be terminated, and the parties shall have no further obligations under this Contract.

3.4. Sale of Aircraft without the Program. In the event of a sale of the Aircraft without the Program to a Purchaser (which Purchaser shall not be an Affiliate of the Client) during the term of this Contract, the Client shall provide written notice to JSSI at least 10 days prior to the date of closing of such sale. Such notice shall indicate a sale without the Program and shall include the name and address of the Purchaser, the estimated Airframe Operating Hours and landings as of the closing date, and any other information reasonably requested by JSSI. The Client shall update such information in connection with such sale. JSSI shall thereafter consent to termination of this Contract, subject to Section 3.12.

3.5. Early Termination; Certain Circumstances. In the event the Aircraft is damaged beyond economical repair or becomes unrecoverable because of theft, the Client shall provide written notice to JSSI describing such damage or theft within 5 days following the occurrence of such event. The liability of the parties in further performance of this Contract shall be terminated effective as of the date of such damage or theft, subject to Section 3.12.

3.6. Early Termination; Client's Failure to Pay; Failure to Perform. In the event the Client fails to pay any amounts due and owing hereunder or under any other written agreement between the Client and JSSI within 30 days of the applicable due date, or in the event the Client fails to perform any of its other obligations hereunder or under any other written agreement between the Client and JSSI and after written notice of such failure to perform and the passage of a 30-day period such failure to perform persists, then, in addition to any other rights set forth herein, JSSI shall have the right to terminate this Contract upon written notice thereof to the Client, subject to Section 3.12.

3.7. Early Termination; Falsification, Misrepresentation or Withholding of Data. In the event the Client falsifies, misrepresents or withholds any data required to be maintained or submitted to JSSI or any Approved Repair Facility pursuant to this Contract or pursuant to any other written agreement between the Client and JSSI, JSSI shall thereafter have the right to terminate this Contract by providing written notice thereof to the Client and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of the Client's receipt of such notice, subject to Section 3.12.

3.8. Early Termination; Insolvency; Bankruptcy. If the Client is or becomes insolvent or generally fails to pay, or admits in writing its inability to pay, debt owed as it becomes due, or if the Client applies for, consents to or acquiesces in the appointment of a trustee, receiver or other custodian for the Client or any of its property, or makes a general assignment for the benefit of creditors, or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for the Client or for a substantial part of the Client's property and is not discharged within 60 days, or any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law is commenced in respect of the Client, and if such case or proceeding is not commenced by the Client, it is consented to or acquiesced in by the Client or remains for 60 days undismissed, or any proceeding shall be instituted by or against the Client for its liquidation or dissolution or the Client's business shall terminate for any reason, or the Client takes any action to authorize, or in the furtherance of, any of the foregoing, JSSI shall have the right to terminate this Contract by providing written notice thereof to the Client and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of the Client's receipt of such notice, subject to Section 3.12.

3.9. Early Termination; Repossession. In the event that during the term hereof the Aircraft is repossessed or seized by a lender, lessor, or other third party, the parties hereto shall have no further obligations hereunder, subject to Section 3.12.

3.10. Credit Towards Replacement Aircraft. In the event this Contract is terminated pursuant to Section 3.4 or Section 3.5, if the Client is in compliance with all terms and conditions of this Contract and any other written agreement between the Client and JSSI, the Client shall have the rights set forth in this Section 3.10 or Section 3.11, as the Client shall elect in writing at the time of termination. In the event the Client fails to make an election, the Client shall be deemed to have elected the Credit. If the Client elects a Credit and enrolls a Replacement Aircraft in the Program, the Client shall be eligible for a one-time application of the amount of the Credit under this Contract, against either (a) the amount of the Pro Rata Reduction Fee, if any, due under the new contract for the Replacement Aircraft if the Replacement Aircraft is an In-Service Aircraft; or (b) the amount of monthly

payments due under such new contract if the Replacement Aircraft is a New Aircraft. The Client's rights under this Section 3.10 shall expire in the event that the Client does not enter into a new contract for a Replacement Aircraft within 36 months from the date of the termination of this Contract pursuant to either Section 3.4 or Section 3.5, as applicable. Once applied, the Credit will be deemed to have been used and shall not be included in the account balance relating to such Replacement Aircraft.

3.11 Efficiency Bonus. In the event that (a) (i) the Client does not renew this Contract at the end of the current term described in Section 3.1 or (ii) this Contract terminates pursuant to Section 3.4 or 3.5, and the Client has elected in writing to receive the rights set forth in this Section 3.11, (b) the Account Balance is a positive amount, and (c) the Client is in compliance with all terms and conditions of this Contract (including payment of Minimum Service Charges, if any, accrued through expiration of the current term or date of termination) and any other written agreement between the Client and JSSI, the Client shall have the right to receive an "efficiency bonus", as described in this section, and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of expiration or termination. Within 90 days of the expiration of the current term or date of termination, JSSI shall pay to the Client an amount equal to 70% of the Credit (calculated for the current term of the Program only) as of the date of such expiration or termination.

3.12. Effect of Termination. In the event the Contract is terminated for any reason, the Client shall: (a) deliver to JSSI reasonable evidence of the basis for early termination, if applicable; (b) deliver to JSSI the Flight Hours and Engine Cycles for each Engine as of the termination date, and any other information reasonably requested by JSSI in order to establish the Client's liabilities accrued under this Contract; (c) immediately pay all amounts due and owing by the Client through the date of such termination or expiration, including any Minimum Service Charges accrued through such date (if applicable); and (d) return all equipment on loan to the Client hereunder, to the extent possible. In addition, in the event this Contract is terminated for any reason prior to the expiration of the term, and the Account Balance (calculated for the current term of the Program only) at the time of termination is negative, then the Client shall be obligated to re-pay to JSSI the negative Account Balance (calculated for the current term of the Program only) prior to termination. Such payment shall be in addition to any other amounts owed hereunder and shall not be considered liquidated damages or an election of remedies. For the avoidance of doubt, the Client shall have no right to any rebate, refund, or reimbursement except to the extent otherwise expressly set forth herein.

Section 4. Fees and Other Charges.

4.1. Contract Effectiveness. JSSI shall have no obligations hereunder unless and until this Contract is executed and delivered by both parties, all initial Fees, as specified on the cover page, are paid, the Pre-induction Diagnostics Survey has been completed and the Aircraft has been accepted by JSSI.

4.2. Monthly Payment. Each month during the term of this Contract, the Client shall make a monthly payment based upon an established Airframe Hourly Rate and the Flight Hours logged during the preceding month, as well as an Administrative Fee, if applicable.

Not later than the 10th day of each month, the Client shall (a) submit a report on-line using the JSSI website, providing accurate operational information including the Airframe total time and landings logged during the immediately preceding month, and (b) pay an amount equal to the time logged for such month multiplied by the Airframe Hourly Rate. This report must be submitted even in the event the Aircraft is not flown during a given month.

On the anniversary date of this Contract each year, JSSI shall be entitled to adjust its charges to the Client, establishing the new Airframe Hourly Rate for the following 12-month period. Such adjustment will be calculated based on the increase in OEM parts prices for a selection of Covered Parts reasonably identified by JSSI.

4.3. Payment of Other Invoices. The Client shall pay any invoice issued hereunder other than invoices for monthly payments within 10 days of the date of the invoice, unless otherwise indicated on the invoice.

4.4. Payments in U.S. Dollars. All payments hereunder shall be made in U.S. dollars, payable subject to JSSI's standard payment policies and procedures as in effect from time to time. Prepayment may be made without penalty. In the event the Client fails to make any 3 payments when due hereunder, JSSI shall have the right to require the Client to make all future payments hereunder by prepayment, automatic debit or credit card.

4.5. Late Charges and Other Rights. In the event the Client fails to make any payment when due hereunder or under any other written agreement between the Client and JSSI, and such payment remains unpaid for a period of at least 30 days after the due date of the invoice, all services provided hereunder may be suspended or discontinued, and JSSI shall also have the right to assess a late charge on the outstanding invoice amount at a rate of 18% per annum, assessed monthly, from the date of the invoice to the date such invoice is paid. In the event the Client fails to submit any monthly report when due hereunder or under any other written agreement between the Client and JSSI, and such report remains unsubmitted for a period of 30 days after the end of the applicable month, all services provided hereunder may be suspended or discontinued, and JSSI shall also have the right to assess a late charge at a rate of 18% per annum times the Monthly Equivalent of the Anticipated Aircraft Flight Profile. In addition, the Client hereby grants to JSSI the right to file liens against the Aircraft in order to enforce JSSI's right to collect any past-due amounts owed by the Client hereunder. The Client agrees to notify JSSI in writing of any invoiced amount disputed by the Client by providing written notice thereof, setting forth the amount and basis of such dispute, within 30 days of the invoice date, and the Client shall be deemed to have waived such dispute unless such notice is timely provided.

4.6. Minimum Service Charge. The Client agrees to pay a Minimum Service Charge based upon the minimum operating hours, as set forth on the cover page multiplied times the then-current Airframe Hourly Rate. In the event the Client fails to operate the Aircraft for the minimum operating hours in any Contract year, JSSI shall be entitled to invoice the Client, and the Client shall pay, for such deficiency.

4.7. Anticipated Aircraft Flight Profile. The Client agrees to utilize the Aircraft based upon the Anticipated Aircraft Flight Profile set forth on the cover page. In the event the Client fails to operate the Aircraft pursuant to the Anticipated Aircraft Flight Profile for any Contract year, and such failure results in any change to the specific inspection criteria set forth in the applicable Manuals and/or results in a change to the Inspections and/or Covered Parts to be covered during the term hereof, JSSI shall have the right to adjust the Airframe Hourly Rate accordingly.

4.8. Annual Monthly Service Charge Review. Within the 90-day period prior to any anniversary date of this Contract, JSSI shall consult with the Client to determine the Anticipated Aircraft Flight Profile for the next Contract year. Based upon such Anticipated Aircraft Flight Profile, JSSI will determine an appropriate revised Airframe Hourly Rate, if necessary, which will be implemented at such anniversary date of this Contract.

4.9. Tax Exempt Status. If the Client is tax-exempt, the Client must provide to JSSI written evidence of its tax-exempt status issued by one or more taxing authorities upon execution of this Contract and upon any renewal of or change to such tax-exempt status. If the Client fails to provide current evidence of tax-exempt status to JSSI, JSSI will be unable to obtain tax-exempt treatment on behalf of the Client with respect to repair and maintenance costs covered hereunder and shall invoice the Client directly for any taxes actually assessed.

4.10. Litigation Expenses. If a judgment is rendered in favor of a party hereto in connection with a breach or threatened breach of this Contract by the other party, the prevailing party shall be entitled to recover its reasonable litigation expenses, including attorneys' fees.

4.11. Transfer Fee. In the event of a sale of the Aircraft, as described in Section 3.3, resulting in the execution of a new contract with the Purchaser, a Transfer Fee shall be due and payable to JSSI as set forth on the cover page.

Section 5. General Provisions.

5.1. Entire Agreement. This Contract constitutes the entire agreement of the parties hereto concerning the subject matter hereof and supersedes all prior and contemporaneous agreements between the

payments due under such new contract if the Replacement Aircraft is a New Aircraft. The Client's rights under this Section 3.10 shall expire in the event that the Client does not enter into a new contract for a Replacement Aircraft within 36 months from the date of the termination of this Contract pursuant to either Section 3.4 or Section 3.5, as applicable. Once applied, the Credit will be deemed to have been used and shall not be included in the account balance relating to such Replacement Aircraft.

3.11. **Efficiency Bonus**. In the event that (a) (i) the Client does not renew this Contract at the end of the current term described in Section 3.1 or (ii) this Contract terminates pursuant to Section 3.4 or 3.5, and the Client has elected in writing to receive the rights set forth in this Section 3.11, (b) the Account Balance is a positive amount, and (c) the Client is in compliance with all terms and conditions of this Contract (including payment of Minimum Service Charges, if any, accrued through expiration of the current term or date of termination) and any other written agreement between the Client and JSSI, the Client shall have the right to receive an "efficiency bonus", as described in this section, and the liability of the parties in further performance of this Contract shall be terminated effective as of the date of expiration or termination. Within 90 days of the expiration of the current term or date of termination, JSSI shall pay to the Client an amount equal to 70% of the Credit (calculated for the current term of the Program only) as of the date of such expiration or termination.

3.12. **Effect of Termination**. In the event the Contract is terminated for any reason, the Client shall: (a) deliver to JSSI reasonable evidence of the basis for early termination, if applicable; (b) deliver to JSSI the Flight Hours and Engine Cycles for each Engine as of the termination date, and any other information reasonably requested by JSSI in order to establish the Client's liabilities accrued under this Contract; (c) immediately pay all amounts due and owing by the Client through the date of such termination or expiration, including any Minimum Service Charges accrued through such date (if applicable); and (d) return all equipment on loan to the Client hereunder, to the extent possible. In addition, in the event this Contract is terminated for any reason prior to the expiration of the term, and the Account Balance (calculated for the current term of the Program only) at the time of termination is negative, then the Client shall be obligated to re-pay to JSSI the negative Account Balance (calculated for the current term of the Program only) prior to termination. Such payment shall be in addition to any other amounts owed hereunder and shall not be considered liquidated damages or an election of remedies. For the avoidance of doubt, the Client shall have no right to any rebate, refund, or reimbursement except to the extent otherwise expressly set forth herein.

**Section 4. Fees and Other Charges.**

4.1. **Contract Effectiveness**. JSSI shall have no obligations hereunder unless and until this Contract is executed and delivered by both parties, all Initial Fees, as specified on the cover page, are paid, the Pre-Induction Diagnostics Survey has been completed and the Aircraft has been accepted by JSSI.

4.2. **Monthly Payment**. Each month during the term of this Contract, the Client shall make a monthly payment based upon an established Airframe Hourly Rate and the Flight Hours logged during the preceding month, as well as an Administrative Fee, if applicable.

Not later than the 10th day of each month, the Client shall (a) submit a report on-line using the JSSI website, providing accurate operational information including the Airframe total time and landings logged during the immediately preceding month, and (b) pay an amount equal to the time logged for such month multiplied by the Airframe Hourly Rate. This report must be submitted even in the event the Aircraft is not flown during a given month.

On the anniversary date of this Contract each year, JSSI shall be entitled to adjust its charges to the Client, establishing the new Airframe Hourly Rate for the following 12-month period. Such adjustment will be calculated based on the increase in OEM parts prices for a selection of Covered Parts reasonably identified by JSSI.

4.3. **Payment of Other Invoices**. The Client shall pay any invoice issued hereunder other than invoices for monthly payments within 10 days of the date of the invoice, unless otherwise indicated on the invoice.

4.4. **Payments in U.S. Dollars**. All payments hereunder shall be made in U.S. dollars, payable subject to JSSI's standard payment policies and procedures as in effect from time to time. Prepayment may be made without penalty. In the event the Client fails to make any 3 payments when due hereunder, JSSI shall have the right to require the Client to make all future payments hereunder by prepayment, automatic debit or credit card.

4.5. **Late Charges and Other Rights**. In the event the Client fails to make any payment when due hereunder or under any other written agreement between the Client and JSSI, and such payment remains unpaid for a period of at least 30 days after the due date of the invoice, all services provided hereunder may be suspended or discontinued, and JSSI shall have the right to assess a late charge on the outstanding invoice amount at a rate of 18% per annum, assessed monthly, from the date of the invoice to the date such invoice is paid. In the event the Client fails to submit any monthly report when due hereunder or under any other written agreement between the Client and JSSI, and such report remains unsubmitted for a period of 30 days after the end of the applicable month, all services provided hereunder may be suspended or discontinued, and JSSI shall also have the right to assess a late charge at a rate of 18% per annum times the Monthly Equivalent of the Anticipated Aircraft Flight Profile. In addition, the Client hereby grants to JSSI the right to file liens against the Aircraft in order to enforce JSSI's right to collect any past-due amounts owed by the Client hereunder. The Client agrees to notify JSSI in writing of any invoiced amount disputed by the Client by providing written notice thereof, setting forth the amount and basis of such dispute, within 30 days of the invoice date, and the Client shall be deemed to have waived such dispute unless such notice is timely provided.

4.6. **Minimum Service Charge**. The Client agrees to pay a Minimum Service Charge based upon the minimum operating hours, as set forth on the cover page multiplied times the then-current Airframe Hourly Rate. In the event the Client fails to operate the Aircraft for the minimum operating hours in any Contract year, JSSI shall be entitled to invoice the Client, and the Client shall pay, for such deficiency.

4.7. **Anticipated Aircraft Flight Profile**. The Client agrees to utilize the Aircraft based upon the Anticipated Aircraft Flight Profile set forth on the cover page. In the event the Client fails to operate the Aircraft pursuant to the Anticipated Aircraft Flight Profile for any Contract year, and such failure results in any change to the specific inspection criteria set forth in the applicable Manuals and/or results in a change to the Inspections and/or Covered Parts to be covered during the term hereof, JSSI shall have the right to adjust the Airframe Hourly Rate accordingly.

4.8. **Annual Monthly Service Charge Review**. Within the 90-day period prior to any anniversary date of this Contract, JSSI shall consult with the Client to determine the Anticipated Aircraft Flight Profile for the next Contract year. Based upon such Anticipated Aircraft Flight Profile, JSSI will determine an appropriate revised Airframe Hourly Rate, if necessary, which will be implemented at such anniversary date of this Contract.

4.9. **Tax Exempt Status**. If the Client is tax-exempt, the Client must provide to JSSI written evidence of its tax-exempt status issued by one or more taxing authorities upon execution of this Contract and upon any renewal of or change to such tax-exempt status. If the Client fails to provide current evidence of tax-exempt status to JSSI, JSSI will be unable to obtain tax-exempt treatment on behalf of the Client with respect to repair and maintenance costs covered hereunder and shall invoice the Client directly for any taxes actually assessed.

4.10. **Litigation Expenses**. If a judgment is rendered in favor of a party hereto in connection with a breach or threatened breach of this Contract by the other party, the prevailing party shall be entitled to recover its reasonable litigation expenses, including attorneys' fees.

4.11. **Transfer Fee**. In the event of a sale of the Aircraft, as described in Section 3.3, resulting in the execution of a new contract with the Purchaser, a Transfer Fee shall be due and payable to JSSI as set forth on the cover page.

**Section 5. General Provisions.**

5.1. **Entire Agreement**. This Contract constitutes the entire agreement of the parties hereto concerning the subject matter hereof and supersedes all prior and contemporaneous agreements between the

AFPO-2018-1      A-4      Proprietary & Confidential

parties. No modification of this Contract shall have any force or effect unless the same is in writing and duly executed by each of the parties hereto. The Exhibits attached hereto are hereby incorporated by reference in, and made a part of, this Contract. Neither party hereto has relied on any statement, representation or warranty, written or oral, made by the other party, except to the extent expressly set forth herein.

5.2. Notices. All invoices shall effective when posted to the JSSI client web portal at www.jetsupport.com, or such other system as JSSI may reasonably provide. Any other notice or communication to be given hereunder shall be in writing and shall be deemed to have been duly given on the date of delivery, provided delivery is actually tendered at the appropriate address, addressed to the person to receive such notice, (a) in person, (b) by courier service, or (c) 3 days after deposit in first class certified mail, postage prepaid, return receipt requested, all addressed as set forth in this Contract or such other address as either party hereto shall designate to the other in conformity with the foregoing.

5.3. Governing Law. This Contract shall be governed by, and construed in accordance with, the laws of the State of Illinois, without regard to its conflicts of laws principles. The United Nations Convention on Contracts for the International Sale of Goods shall not be applicable to the Parties' rights or obligations under this Contract. To the extent that the Client or any of its property becomes entitled at any time to any immunity on the grounds of sovereignty or otherwise for any legal action, suit, or proceeding of any nature, the Client hereby irrevocably waives the application of immunity, and particularly the U.S. Foreign Sovereign Immunities Act, 28 U.S.C. 1602, et. seq. insofar as such immunity relates to the Client's rights and obligations in connection with this Contract.

5.4. Waiver; Remedies. No delay on the part of any party in exercising any right shall operate as a waiver thereof, nor shall any waiver of any right operate as a waiver of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies that the parties otherwise may have at law, in equity or both.

5.5. Beneficiaries of Contract. The rights and obligations contained in this Contract are provided for the exclusive benefit of the parties hereto and shall not benefit, and do not benefit, any third parties.

5.6. Force Majeure. Neither party shall be liable for any failure or delay in the performance or fulfillment of any of its duties or obligations hereunder, directly or indirectly resulting from any cause or circumstance beyond its control, including acts of nature, applicable laws, regulations, orders or restrictions, war, war-like conditions, hostilities, terrorism or civil insurrection, mobilization, blockade, embargo or other transportation delay, detention, revolution, riot, looting, strike, lockout or other labor dispute, shortage of labor, inability to secure parts, materials, supplies or services at reasonable prices or because of shortages thereof, epidemic, fire or flood; provided, that any such force majeure event shall not relieve a party from the obligation to pay in a timely manner any payment which accrued prior to the occurrence of such event; provided, further, that the non-performing party will give prompt notice to the other party of the occurrence of such event and will use commercially reasonable efforts to resolve the event or otherwise recommence performance as soon as reasonably possible. During such period, the other party may suspend its own performance hereunder.

5.7. Binding Effect; Assignment. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This Contract may not be assigned by the Client without the prior written consent of JSSI. JSSI shall be entitled to assign some or all of its rights and remedies hereunder without notice or prior consent of the Client.

5.8. Severability. Whenever possible, each provision of this Contract shall be interpreted in such a manner as to be valid under applicable law. However, notwithstanding anything contained in this Contract to the contrary, if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Contract.

5.9. Waiver of Jury Trial. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS CONTRACT OR ANY OTHER DOCUMENT OR INSTRUMENT DELIVERED TO THE OTHER AS OF THE DATE HEREOF, PRIOR THERETO OR THEREAFTER, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE PARTIES HERETO. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

5.10. Forum Choice and Venue. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY AGREES THAT ANY ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS CONTRACT SHALL BE LITIGATED EXCLUSIVELY IN FEDERAL OR STATE COURTS HAVING SITUS WITHIN THE UNITED STATES OF AMERICA, STATE OF ILLINOIS, COUNTY OF COOK. EACH OF THE PARTIES HEREBY IRREVOCABLY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT LOCATED WITHIN SUCH COUNTY. EACH OF THE PARTIES HEREBY WAIVES ANY RIGHT EITHER OF THEM MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT OR BROUGHT BY IT IN ACCORDANCE WITH THIS SECTION. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

5.11. Interpretation.

(a) The titles of the sections have been inserted as a matter of convenience and reference only, and shall not control or affect the meaning, interpretation or construction of this Contract.

(b) The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Contract as a whole and not to any particular provision of this Contract, and article, section, paragraph and exhibit references are to the articles, sections, paragraphs and exhibits of this Contract unless otherwise specified. Whenever the words "include," "includes" or "including" are used in this Contract they shall be deemed to be followed by the words "without limitation." The words describing the singular number shall include the plural and vice versa, and words denoting any gender shall include all genders and words denoting natural persons shall include corporations and partnerships and vice versa. The phrases "the date of this Contract," "the date hereof" and terms of similar import, unless the context otherwise requires, shall be deemed to refer to the date first written in the preamble of this Contract.

(c) The parties have participated jointly in the negotiation and drafting of this Contract. In the event an ambiguity or question of intent or interpretation arises, this Contract shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Contract.

(d) This Contract is written in the English language. Any translation is for reference only and shall not be deemed binding on the parties.

5.12. Counterparts. This Contract may be executed and delivered in any number of counterparts, each of which shall be considered an original and all of which, collectively, shall constitute a single agreement. The delivery of a facsimile or other electronic signature will constitute execution by such signatory.

5.13. Essence of Time. The Client and JSSI agree that time is of the essence hereof.

parties. No modification of this Contract shall have any force or effect unless the same is in writing and duly executed by each of the parties hereto. The Exhibits attached hereto are hereby incorporated by reference in, and made a part of, this Contract. Neither party hereto has relied on any statement, representation or warranty, written or oral, made by the other party, except to the extent expressly set forth herein.

5.2. Notices. All invoices shall effective when posted to the JSSI client web portal at www.jetsupport.com, or such other system as JSSI may reasonably provide. Any other notice or communication to be given hereunder shall be in writing and shall be deemed to have been duly given on the date of delivery, provided delivery is actually tendered at the appropriate address, addressed to the person to receive such notice, (a) in person, (b) by courier service, or (c) 3 days after deposit in first class certified mail, postage prepaid, return receipt requested, all addressed as set forth in this Contract or such other address as either party hereto shall designate to the other in conformity with the foregoing.

5.3. Governing Law. This Contract shall be governed by, and construed in accordance with, the laws of the State of Illinois, without regard to its conflicts of laws principles. The United Nations Convention on Contracts for the International Sale of Goods shall not be applicable to the Parties' rights or obligations under this Contract. To the extent that the Client or any of its property becomes entitled at any time to any immunity on the grounds of sovereignty or otherwise for any legal action, suit, or proceeding of any nature, the Client hereby irrevocably waives the application of immunity, and particularly the U.S. Foreign Sovereign Immunities Act, 28 U.S.C. 1602, et. seq. insofar as such immunity relates to the Client's rights and obligations in connection with this Contract.

5.4. Waiver; Remedies. No delay on the part of any party in exercising any right shall operate as a waiver thereof, nor shall any waiver of any right operate as a waiver of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies that the parties otherwise may have at law, in equity or both.

5.5. Beneficiaries of Contract. The rights and obligations contained in this Contract are provided for the exclusive benefit of the parties hereto and shall not benefit, and do not benefit, any third parties.

5.6. Force Majeure. Neither party shall be liable for any failure or delay in the performance or fulfillment of any of its duties or obligations hereunder, directly or indirectly resulting from any cause or circumstance beyond its control, including acts of nature, applicable laws, regulations, orders or restrictions, war, war-like conditions, hostilities, terrorism or civil insurrection, mobilization, blockade, embargo or other transportation delay, detention, revolution, riot, looting, strike, lockout or other labor dispute, shortage of labor, inability to secure parts, materials, supplies or services at reasonable prices or because of shortages thereof, epidemic, fire or flood; provided, that any such force majeure event shall not relieve a party from the obligation to pay in a timely manner any payment which accrued prior to the occurrence of such event; provided, further, that the non-performing party will give prompt notice to the other party of the occurrence of such event and will use commercially reasonable efforts to resolve the event or otherwise recommence performance as soon as reasonably possible. During such period, the other party may suspend its own performance hereunder.

5.7. Binding Effect; Assignment. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This Contract may not be assigned by the Client without the prior written consent of JSSI. JSSI shall be entitled to assign some or all of its rights and remedies hereunder without notice or prior consent of the Client.

5.8. Severability. Whenever possible, each provision of this Contract shall be interpreted in such a manner as to be valid under applicable law. However, notwithstanding anything contained in this Contract to the contrary, if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Contract.

5.9. Waiver of Jury Trial. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS CONTRACT OR ANY OTHER DOCUMENT OR INSTRUMENT DELIVERED TO THE OTHER AS OF THE DATE HEREOF, PRIOR THERETO OR THEREAFTER, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE PARTIES HERETO. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

5.10. Forum Choice and Venue. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY AGREES THAT ANY ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS CONTRACT SHALL BE LITIGATED EXCLUSIVELY IN FEDERAL OR STATE COURTS HAVING SITUS WITHIN THE UNITED STATES OF AMERICA, STATE OF ILLINOIS, COUNTY OF COOK. EACH OF THE PARTIES HEREBY IRREVOCABLY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT LOCATED WITHIN SUCH COUNTY. EACH OF THE PARTIES HEREBY WAIVES ANY RIGHT EITHER OF THEM MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT OR BROUGHT BY IT IN ACCORDANCE WITH THIS SECTION. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

5.11. Interpretation.

(a) The titles of the sections have been inserted as a matter of convenience and reference only, and shall not control or affect the meaning, interpretation or construction of this Contract.

(b) The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Contract as a whole and not to any particular provision of this Contract, and article, section, paragraph and exhibit references are to the articles, sections, paragraphs and exhibits of this Contract unless otherwise specified. Whenever the words "include," "includes" or "including" are used in this Contract they shall be deemed to be followed by the words "without limitation." The words describing the singular number shall include the plural and vice versa, and words denoting any gender shall include all genders and words denoting natural persons shall include corporations and partnerships and vice versa. The phrases "the date of this Contract," "the date hereof" and terms of similar import, unless the context otherwise requires, shall be deemed to refer to the date first written in the preamble of this Contract.

(c) The parties have participated jointly in the negotiation and drafting of this Contract. In the event an ambiguity or question of intent or interpretation arises, this Contract shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Contract.

(d) This Contract is written in the English language. Any translation is for reference only and shall not be deemed binding on the parties.

5.12. Counterparts. This Contract may be executed and delivered in any number of counterparts, each of which shall be considered an original and all of which, collectively, shall constitute a single agreement. The delivery of a facsimile or other electronic signature will constitute execution by such signatory.

5.13. Essence of Time. The Client and JSSI agree that time is of the essence hereof.



**JSSI**

JET SUPPORT SERVICES, INC.
180 N STETSON, 29TH FLOOR
CHICAGO, IL 60601 USA
PHONE +1 312 644 4444
FAX +1 312 644 1544

## STATEMENT

Flow Line Transportation, LLC
Craig I Sanders
4514 Cole Ave., Suite 1175
Dallas, TX 75205
United States

EXHIBIT _B_

| | |
|---|---|
| Statement Date : | 5/13/2020 |
| Contract Number : | JSSI0049495 |
| Registration Number : | N664BC |
| Payment Terms : | NET 10 |

### FLIGHT HOUR SUMMARY

| | |
|---|---|
| Contract Year Start Date : | 9/27/2019 |
| Last Month Reported : | 10/31/2019 |
| | AIRFRAME 17.5 |
| | ENGINE 17.5 |
| Contract YTD Required : | AIRFRAME 100.0 |
| | ENGINE 160.0 |

Your account is temporarily on hold due to the following: Flight Hour Reporting, Past Due Invoice

Payments made via mail or wire within five days of the statement date may not be reflected on this statement. Please check your account on MyJSSI.com for the most current information.

**CLIENT RELATIONSHIP MANAGER**
Eric Borgstrom
Email: eborgstrom@jetsupport.com
Phone: (312) 644-8814

**TECHNICAL SERVICES**
Walter Given
Email: wgiven@jetsupport.com
Phone: (914) 241-8194

| Open Invoices: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Due Date | Document No. | Type | Description | Original Amount | Amount Applied | Current Amount |
| 8/31/2019 | 9/10/2019 | WEBINV208750 | Invoice | Monthly Hours | $16,266.00 | $0.00 | $16,266.00 |
| 9/30/2019 | 10/10/2019 | PRJINV000000305 | Invoice | Flight Hours | $29,888.78 | $28,023.93 | $1,864.85 |
| 10/17/2019 | 10/27/2019 | PRJINV000001650 | Invoice | Minimum fees | $57,409.36 | $0.00 | $57,409.36 |
| 10/31/2019 | 11/10/2019 | PRJINV000002161 | Invoice | Flight Hours | $7,728.18 | $0.00 | $7,728.18 |
| 11/18/2019 | 11/28/2019 | PRJINV000003893 | Invoice | Minimum fees | $137,239.38 | $0.00 | $137,239.38 |
| 12/2/2019 | 12/12/2019 | PRJINV000004510 | Invoice | Maintenance Share | $42.06 | $0.00 | $42.06 |
| | | | | | **TOTAL - Open Invoices:** | | **$220,549.83** |

| Open Payments and Credits (Please contact your Client Relationship Manager regarding application information): | | | | | | |
|---|---|---|---|---|---|---|
| Date | Document No. | Type | Description | Original Amount | Amount Applied | Current Amount |
| | | | **TOTAL - Open Payments and Credits:** | | | **$0.00** |

### Aging Summary

| | Past Due | | | | |
|---|---|---|---|---|---|
| Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | > 91 Days | TOTAL - ALL OPEN ITEMS |
| $0.00 | $0.00 | $0.00 | $0.00 | $220,549.83 | $220,549.83 |

REMINDER: You are required to report each month's flight hours by the 10th of the following month even if the aircraft did not fly.

ATTENTION: Payment instructions changed on October 1, 2017. Please take note and ensure you are using the correct instructions. Effective January 1, 2018, payments not following these instructions will be returned.

 **PAYMENTS BY CHECK:**

GENERAL MAIL
Jet Support Services, Inc.
Department CH 17126
Palatine, IL 60055-7126

OVERNIGHT/FEDEX/UPS MAIL
Jet Support Services, Inc.
Location 17126
5505 N. Cumberland Ave
Suite 307, Chicago, IL 60656-1471

 **PAYMENTS BY WIRE OR ACH:**

Beneficiary: Jet Support Services, Inc. Master Collections Account
Account Number: CUX8105645
Wire/Credit Funds to: First Republic Bank
101 Pine Street, San Francisco, CA 94111
ABA/Routing Number: 321 081 669
SWIFT Code: FRBBUS6S

**WE ALSO ACCEPT:**
    VISA 

ACH transfers are accepted for Domestic U.S. payments only. The ACH Account Number and ABA/Routing Number are the same as in the wire instructions above.